**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Appellant,**

v.

**NUECES COUNTY APPRAISAL DISTRICT, Appellee.**

No. 13–92–713–CV.

Court of Appeals of Texas, Corpus Christi.

March 24, 1994.

David J. Kaplan, Geary, Porter & West, Dallas, for appellant.

Robert M. Inserni, Lance K. Bruun, Kleberg & Head, Corpus Christi, for appellee.

Before DORSEY, GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an *ad valorem* property tax case. The Department of Housing and Urban Development (HUD) appeals from a summary judgment granted in favor of the Nueces County Appraisal District (Appraisal District). By a single point of error, HUD complains that the trial court erred when it concluded that HUD lacked standing to appeal an order of the Appraisal Review Board to district court. We reverse the summary judgment and remand the case to the trial court for further proceedings.

The following facts are undisputed. HUD owned the Hampton Port Apartments (the property) on January 1, 1991. The Appraisal District determined that the value of the property on January 1, 1991, was $1,933,913. HUD timely filed a Notice of Protest with the Nueces County Appraisal Review Board. The Appraisal Review Board conducted a hearing on July 15, 1991, and issued its Notice of Final Order Determining Protest on August 2, 1991. The Appraisal Review Board upheld the appraisal of $1,933,913. HUD owned the property until August 20, 1991, when it conveyed the property to the Housing Authority of the City of Corpus Christi for $528,600. On September 25, 1991, HUD filed this case in district court. HUD's original petition requested a *de novo* review of the Appraisal Review Board's decision pursuant to Chapter 42 of the Texas Tax Code.

Property taxes are the personal obligation of the person owning or acquiring property on January 1 of the year for which the tax is imposed. TEX. TAX CODE ANN. § 32.07(a) (Vernon 1992). A person is not relieved of the property tax obligation because he no longer owns the property. *Id.* The Texas tax code also provides:

A *property owner* is entitled to appeal:

(1) an order of the appraisal review board determining a protest by the property owner as provided by Subchapter C of Chapter 41 of this code.

TEX. TAX CODE ANN. § 42.01(1) (Vernon 1992) (emphasis added).

The Appraisal District filed a motion for summary judgment, asserting that HUD did not have standing to pursue the property tax appeal in district court because HUD was not the "property owner" at the time it filed its petition for judicial review of the Appraisal Review Board's determination. The Appraisal District argued that since HUD conveyed the property before it filed the Chapter 42 appeal, HUD no longer had the right to pursue judicial review of the appraised value of the property. The trial court agreed and granted the Appraisal District's motion for summary judgment. The trial court's decision imposes personal liability on HUD for all of the 1991 *ad valorem* taxes on the property, without the right of judicial review of the Appraisal Review Board's determination.

By its single point of error, HUD asserts that it has standing and is the proper party to bring an appeal under Chapter 42 because it remains personally liable for all of the 1991 *ad valorem* taxes on the property, which are based on the appraised value of the property as of January 1, 1991. At issue is whether HUD has standing to maintain its appeal of the property appraisal and whether HUD is a "property owner" under Chapters 41 and 42.

HUD contends that it has standing and is a "property owner" for Chapter 42 purposes because it is the person listed on the tax roll that is responsible for the 1991 *ad valorem* taxes on the property. Chapters 25 and 26 of the Texas Tax Code govern the preparation of the property tax roll. The tax roll is developed from Appraisal District records which list appraisals of all properties by ownership as of January 1. The appraisal records are prepared by May 15 or as soon thereafter as practicable. The records are then used by the taxing units to calculate the amount of taxes due on each property. Finally, the tax roll is prepared from this list and taxes are assessed against each property

owner. The Appraisal District relies on two cases which it contends define "property owner" for Chapter 42 purposes. *See Plaza Equity Partners v. Dallas Cent. Appraisal Dist.,* 765 S.W.2d 520, 521–22 (Tex.App.—Dallas 1989, no writ); *Bennett–Barnes Invs. Co. v. Brown County Appraisal Dist.,* 696 S.W.2d 208, 209 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). Although these cases define "property owner" for Chapter 42 purposes, we decline to apply the definitions.

The issue in *Plaza Equity,* was whether a defective or incorrect identification of the property owner rendered a Notice of Appeal ineffective to confer jurisdiction on the district court for a Chapter 42 appeal. The *Plaza Equity* court concluded that a defect in identifying the property owner did not render the notice ineffective to confer jurisdiction on the district court. *Plaza Equity Partners,* 765 S.W.2d at 522.

The issue in *Bennett–Barnes,* was whether a lessee was a "property owner" for Chapters 41 and 42 purposes. *Bennett–Barnes,* 696 S.W.2d at 209. The *Bennett–Barnes* court concluded that the lessee never had an ownership interest in the property for purposes of property taxation. *Id.* at 209. In its analysis, the *Bennett–Barnes* court resorted to dictionary definitions of "property owner" and "lessee." While appropriate for the *Bennett–Barnes* court's analysis in distinguishing a lessee and property owner, we find the court's definition of "property owner" inappropriate in the case before us.

The term "property owner" was also addressed in *First Nat'l Bank of Bellaire v. Huffman Indep. School Dist.,* 770 S.W.2d 571, 573 (Tex.App.—Houston [14th Dist.] 1989, writ denied). The *Huffman* court looked to the *Bennett–Barnes* court's definition of property owner. The *Huffman* court determined that a lien holder was not a property owner.

■■■ In order for any person to maintain a lawsuit, that person must have "standing" to litigate the matters in issue. *Pankhurst v. Weitinger & Tucker,* 850 S.W.2d 726, 729 (Tex.App.—Corpus Christi 1993, writ denied) (citing *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984)). Standing consists of some interest peculiar to the person individually and not as a member of the general public. *Id.* The standing question is whether the plaintiff has such a personal stake in the outcome of the controversy as to warrant his invocation of the court's jurisdiction. *Texas Workers' Compensation Comm'n v. Garcia,* 862 S.W.2d 61, 67 (Tex.App.—San Antonio 1993, n.w.h.) (citing *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Without a breach of a legal right belonging to a plaintiff, no cause of action arises or can accrue to the plaintiff's benefit. *Pankhurst,* 850 S.W.2d at 729 (citing *Housing Auth. of Harlingen v. State ex rel. Velasquez,* 539 S.W.2d 911, 913 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.)).

■■ The Texas Constitution explicitly provides for equal and uniform taxation in proportion to the market value of property. TEX. CONST. ANN. ART. VIII, §§ 1, 20 (Vernon 1993). Before the 1982 amendments to the property tax code, a taxpayer had a common law right of action to vindicate his constitutional rights, although, as a practical matter, he seldom prevailed. *See Valero Transmission Co. v. Hays Consol. Indep. School Dist.,* 704 S.W.2d 857, 859 n. 1 (Tex.App.—Austin 1985, writ ref'd n.r.e.). This failure to prevail was due to legal doctrines, insurmountable burdens of proof, and controlling presumptions. *Id.* These judicially created impediments were established to effect the orderly collection of revenue so that the functions of government would not be dependent upon the outcome of a multitude of lawsuits. *Id.* The property tax code provisions were enacted by the Legislature to remedy the inequities that characterized the previous local administration of property taxes and the judicial process whereby courts were asked to enjoin the taxation process, to award recovery for a delinquent tax, or to award recovery for a tax paid under protest. *Id.* The tax code now provides for a regular, systematic remedy for a taxpayer who believes his tax to be erroneous for any reason. *Id.*

The tax code now provides for an administrative proceeding before an appraisal review board which reviews the taxpayer's protest and makes a determination. This administrative remedy is established and governed

by Chapter 41. The board's determination is not final. If the taxpayer is not satisfied with the board's determination, he has a right of "appeal" to district court, where the matter may be reviewed *de novo* pursuant to the provisions of Chapter 42. The taxpayer may seek further judicial review in the state appellate courts. The procedures set out in Chapters 41 and 42 are the exclusive means by which a property owner may complain about a property appraisal, with two exceptions. TEX.TAX CODE ANN. § 42.09 (Vernon 1992). Neither exception is applicable in this case.

■ We note that the property tax code allows taxpayers a regular, systematic way to protest property appraisals. We conclude that the intent of the Legislature in setting out this procedure was to provide persons liable for paying the property tax a method by which to complain of the amount assessed. We conclude that it was not the Legislature's intent that a taxpayer be entitled only to part of the review process while remaining fully liable for the property taxes. We conclude that the term "property owner," as set out in Chapters 41 and 42 of the tax code, includes the owner of the property on January 1 of the year for which the property taxes are imposed.[1]

■ We hold that HUD has standing to proceed with an appeal to the district court for a *de novo* review of the appraised value of the property which it owned on January 1, 1991, and for which it is personally liable for property taxes.

We sustain HUD's sole point of error. We reverse the trial court's summary judgment and remand the case to the trial court for further proceedings.

---

1. We note that if, during the pendency of a protest, property ownership changes, the new owner, on application to the review board, may proceed with the protest in the same manner as the property owner who initiated the process. TEX.TAX CODE ANN. § 41.412(b) (Vernon 1992). No provision exists in the tax code addressing the January 1 property owner's ability to continue a protest after conveying the property.